# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### March 6, 2013 Session

## MICHAEL YOUNG v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 10-03359      W. Mark Ward, Judge**

---

**No. W2012-01127-CCA-R3-PC  - Filed April 10, 2013**

---

Petitioner, Michael Young, pleaded guilty to two counts of attempted first degree murder and one count of aggravated robbery in exchange for an effective forty-year sentence. Subsequently, petitioner filed a petition for post-conviction relief. After an evidentiary hearing, the post-conviction court denied relief. On appeal, petitioner argues that trial counsel provided ineffective assistance by failing to file a motion to suppress petitioner's statement to police based on his being a juvenile and by failing to ensure that petitioner understood the sentence alignment included in the plea agreement. He also contends that his guilty plea was rendered involuntary because of trial counsel's ineffective assistance. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JERRY L. SMITH, J., joined.

Marvin Adams, III, Memphis, Tennessee, for the appellant, Michael Young.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Jennifer Morris, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Guilty Plea

On December 15, 2010, petitioner pleaded guilty to two counts of attempted first degree murder, and received the agreed-upon twenty-year sentences on each count, to be served consecutively. Petitioner also pleaded guilty to aggravated robbery in exchange for

an eight-year sentence to be served concurrently with his other sentences. At the guilty plea hearing, the State offered the following factual basis for the plea:

[On] . . . January the 20th of 2010, two Memphis police officers who were operating [in an] undercover capacity . . . had arranged a meeting with Bernard Frazier in . . . Shelby County, Tennessee[,] in the area of 331 Howard. That meeting was to be with regard to the purchase of narcotics from Mr. Frazier. However, Mr. Frazier and [petitioner] had hatched a plan . . . to rob the undercover officers and not sell [narcotics to] the undercover officers . . . .

The officers met Mr. Frazier and [petitioner] behind a car at which time [petitioner] and Mr. Frazier -- [petitioner] in particular, pulled a firearm on the . . . officer and demanded his property. He stole from the officer a cell phone and also a handgun. As [petitioner was] checking the person of the officer, he came across a wire that was attached to a recording device that the officer was wearing[,] at which time [petitioner] fired . . . five shots in the direction of the officer as the officer ran.

There were also shots fired at the other undercover officer who was at the side of the car at the time. [Petitioner] was identified as the individual who fired the shots. He was arrested later that day in possession of the officer's property[,] and he later gave a statement of admission to officers as well.

Trial counsel stipulated to the facts presented by the State. The trial court accepted petitioner's guilty plea after questioning him about his understanding of the plea bargain and of the rights he would waive by pleading guilty.

## II. Post-Conviction

Petitioner filed a pro se petition for post-conviction relief on June 6, 2011. The post-conviction court appointed counsel, and petitioner filed an amended petition on September 16, 2011. The post-conviction court held a hearing on the petition during which petitioner, petitioner's mother, and trial counsel testified. Subsequently, the post-conviction court denied the petition by written order.

At the evidentiary hearing, petitioner testified that he had an "average" relationship with trial counsel prior to the State's offer of a forty-year sentence. At that time, the relationship deteriorated. Petitioner said that trial counsel did not visit him in custody or review discovery with him. Regarding his statement to police, petitioner testified that he "was on Xanax bars and [had smoked] marijuana" that day. He had been in custody for nine

to ten hours prior to giving the statement, and he was not allowed to speak to his mother despite his asking to do so. Petitioner said that he did not sign a waiver of rights form prior to giving his statement. He stated that an investigator told him that he would receive a fifty-two-year sentence and would not be allowed to leave the room until he gave a statement. According to petitioner, trial counsel never discussed the possibility of getting the statement suppressed.

Petitioner testified that trial counsel advised him to plead guilty in exchange for a forty-year sentence, and trial counsel "told [him] that it was going to be one [forty]-year sentence, that everything was going to be run together." His understanding at the time was that he "could parole out in [twelve] to [thirteen] years." When he got his "time sheet[s]" from the department of correction, he realized that he was actually serving two separate twenty-year sentences. He explained that he would have to be paroled on the first twenty-year sentence before beginning to serve the second twenty-year sentence. Petitioner said that he did not know what the term "consecutive" meant when he entered his guilty plea, and he further said that trial counsel did not explain the term to him when he asked.

On cross-examination, petitioner said that the only discovery he received was his statement, his co-defendants' statements, and one hundred pictures. He testified that his understanding about his sentences was that "it was a [twenty]-year sentence for this and a [twenty]-year sentence for that[,] but it was all just [an] equal [forty]-year sentence." He also understood that his potential sentence exposure, had he gone to trial, was eighty to one hundred years. He said, "[Forty] years is a lot of time[,] but it's less[] than [eighty] to [one hundred] years[,] so why would I go to trial with [trial counsel] telling me that I'm going to have to do [eighty] to [one hundred] years automatic[?]"

Petitioner's mother testified that she found out that petitioner was in jail after he had been in custody for three days. Someone with the juvenile court told her that the juvenile court was not obligated to tell her that petitioner was in custody because he was sixteen years of age at the time. She said that she encouraged petitioner to accept the State's offer because "[forty] years [was] way better than [one hundred] years."

Trial counsel testified that he met with petitioner at the jail and before court appearances. He described the jail visits as "nonproductive" because petitioner did not want to review the discovery packet despite trial counsel's repeated attempts. Trial counsel agreed that his investigator provided him with a report about the circumstances of petitioner's statement to police. He stated that he did not believe that a motion to suppress petitioner's statement to police would have succeeded because petitioner's understanding of the system would have had a greater bearing on the validity of his statement than his being a juvenile. He filed a general motion to suppress instead. Regarding petitioner's guilty plea, trial

counsel said that he "informed [petitioner] [that] he had a [twenty] and a [twenty] with an [eight] within for a total of a [forty]-year sentence."

On cross-examination, trial counsel testified that he stopped visiting petitioner in the jail because petitioner became "antagonistic." He said that he discussed with petitioner "[e]very bit of" the evidence against him, his potential exposure at trial, and the "high likelihood of conviction." According to trial counsel, petitioner wanted to argue at trial that if he had wanted to kill one of the undercover officers, he would have shot him instead of "just trying to shoot the gun." Trial counsel said that petitioner's version of a defense was "fairly ludicrous." He testified that he explained the meaning of "consecutive" to petitioner "[m]ore than once."

The post-conviction court denied relief after finding that petitioner was "fully aware that he was receiving two twenty[-]year sentences;" that petitioner had not shown that counsel's performance was deficient; and that petitioner had not shown that he was prejudiced by counsel's performance. In its findings, the post-conviction court specifically accredited "counsel's testimony that he fully explained the terms of the guilty plea and evidence with the [p]etitioner."

## III. Analysis

### A. Ineffective Assistance of Counsel

On appeal, petitioner claims that he received ineffective assistance of counsel. Specifically, he contends that trial counsel provided deficient performance by failing to request the suppression of petitioner's statement to police and by failing to ensure that petitioner understood the sentence alignment to which he was agreeing by pleading guilty. He argues that trial counsel's deficient performance rendered his guilty plea involuntary.

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). A post-conviction petitioner bears the burden of proving his or her allegations of fact by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2012). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)), *perm. app. denied* (Tenn. Feb 16, 2012). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is *de novo* with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citations omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court has previously held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)). Moreover, when a petitioner's claims that ineffective assistance of counsel contributed to his entering a guilty plea that was not voluntary, the Supreme Court has required a petitioner to demonstrate a reasonable probability that but for counsel's ineffectiveness, he would not have entered the guilty plea and would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Accordingly, in this case, petitioner must demonstrate that trial counsel's representation was deficient, and that but for counsel's mistakes, he would not have entered the guilty plea. *Veldora L. Trout v. State*, No. W2000-00857-CCA-R3-PC, 2001 WL 359238, at *2 (Tenn. Crim. App. Apr. 9, 2001).

In this case, petitioner has not shown that trial counsel provided ineffective assistance by failing to file a motion to suppress petitioner's statement to police based on his being a juvenile. Trial counsel testified that a motion to suppress petitioner's statement to police based on his being a juvenile had little likelihood of succeeding, essentially because of petitioner's familiarity with the judicial system. Based on his testimony as accredited by the post-conviction court, trial counsel's decision was strategic and was based on adequate preparation, not due to deficient performance. Petitioner has not shown that trial counsel's performance fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn,* 202 S.W.3d at 116). Furthermore, petitioner has not shown that a motion to suppress would have been successful or that he would have gone to trial but for trial counsel's failure to file a suppression motion based on petitioner's being a juvenile. Therefore, he is not entitled to relief as to this issue.

Petitioner also argues that counsel was ineffective for failing to explain the sentence alignment to him. He maintains that he believed he was agreeing to one forty-year sentence rather than two consecutive twenty-year sentences and that he would have gone to trial if he had known that he would be serving two consecutive sentences. The post-conviction court accredited trial counsel's testimony that he explained to petitioner the sentence alignment under the plea agreement and noted that petitioner's argument described "a distinction

without a difference." Petitioner has not shown that trial counsel provided ineffective assistance in this regard.

## B. Voluntariness of Guilty Plea

Because petitioner maintains that he entered his guilty plea unknowingly as a result of trial counsel's alleged failure to explain the sentence alignment, we will consider the voluntariness of his guilty plea as a free-standing issue. *See Jamal Cooper v. State*, No. M2001-00593-CCA-R3-PC, 2001 WL 1246394, at *6 (Tenn. Crim. App. Oct. 17, 2001) ("The petitioner's claim of ineffective assistance of counsel necessarily implicates the voluntariness of his guilty plea.")

A guilty plea must be entered knowingly, voluntarily, and intelligently. *Lane*, 316 S.W.3d at 562; *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because appellant has been denied due process. *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n.5; *State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003)). To make such a determination, the court must examine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id*. (quoting *Grindstaff v. State*, 297 S.W.3d 208, 218 (Tenn. 2009)). Courts should consider the following factors when ascertaining the validity of a guilty plea:

> (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

*Id*. (quoting *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006)). "[A] plea is not voluntary if it results from '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Id*. at 563 (quoting *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)). Thus, the transcript of the plea colloquy must affirmatively show that a defendant's decision to plead guilty was both voluntary and knowledgeable. *Id*. The trial court must ensure that the defendant entered a knowing and intelligent plea by thoroughly "'canvass[ing] the matter with the accused to make sure that he has a full understanding of what the plea connotes and of its consequences.'" *Id*. (quoting *Blankenship*, 858 S.W.2d at 904).

In this case, petitioner's only argument regarding the voluntariness of his guilty plea is that he claims he believed he was agreeing to serve one forty-year sentence rather than two consecutive twenty-year sentences. There is no debate that petitioner knew he was agreeing to serve a total of forty years in the department of correction. He testified at the post-conviction court that forty years was preferable to the "possible one hundred years" he might have received at trial. Furthermore, the record indicates that petitioner knew he was agreeing to two consecutive twenty-year sentences. Trial counsel testified that he "informed [petitioner] [that] he had a [twenty] and a [twenty] with an [eight] within for a total of a [forty]-year sentence," and the transcript of the guilty plea shows that the State announced the agreed-upon sentences at the beginning of the hearing. In addition, petitioner testified at the post-conviction hearing that he knew there were two twenty-year sentences involved. Petitioner's claim that he entered his guilty plea involuntarily is without merit, and he is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record, the parties' arguments, and the applicable case law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE